General Mills, Inc. v. General Mills, Inc. Mr. Tate. Thank you, Your Honor. Good morning. I'm sorry to make the argument about the interpretation of Section 15. I understand what you argue about the text, but it does seem to me that Park Pride Atlanta and other Georgia case law works against you. Well, Your Honor, first of all, we have to start with the pre-split Fifth Circuit's decision in Brown, which is still binding on this Court, and also Batson-Cook, which predates those other cases, and Georgia has a prior panel rule that's sort of similar to this Court's prior panel rule. So the fact that there are some other cases which don't actually specifically reject the points we're making, I think, entitles us to make the argument, and if I could play it out a little bit. If the more recent, I mean, this is a question, though, that's controlled by Georgia law. Correct. And to the extent that more recent Georgia case law suggests that this kind of provision should be interpreted differently from, say, how the former Fifth Circuit testified, would that really be bound by the intervening State precedents? Well, I don't think so, because, first of all, Batson-Cook predates those cases. They can't overrule Batson-Cook, and Batson-Cook formed the basis for what the Fifth Circuit said in Brown. In any event, they're all sort of — all of the cases, none of them say that you have to use talismanic language. And, in fact — That's true. And so what you wind up having to do is look at the language of a contract that's before the court, the surrounding circumstances, the purpose of the agreement. And in this case, all of those indicia point strongly in favor of finding that there was, in fact, a sufficiently clear intent to indemnify CSX for — even when it's solely at fault. And if I could play it in — Court pride says, all right, so you had a provision that — to indemnify and hold harmless the City of Atlanta from any and all losses, but it was bereft, the court said, of any express or explicit statement about coverage for the City's own negligent acts. Right? Well, that's certainly true, but it didn't contain any of these other indicia that we have here. For example, most importantly, we have a second provision, Section 11, that already covers what happens when the two share fault. And then you have in Section 15 an explicit quid pro quo, the key term being in consideration therefore. So in Section 15, as you know, what happened was CSX gave gratuitously General Mills the right to do its own switching, thereby increasing the risk of an accident because now you're using less well-trained factory workers instead of railroad people to do the work. And it also gave up its revenue stream for doing the switching. So it had to get something substantial in exchange for that, and the only consideration was this indemnification provision, which in that connection, when it says assumes the risk for any and all injuries, in that connection, those words have greater gravity. And I would like to point the Court, if I may, to there's a case called Casey v. Virginian Railway, which is a Fourth Circuit decision applying West Virginia law, but the law is Nashville case, which we also rely on, and in particular, in the Camira case, which was a district court case from Georgia, and in that situation, just like here, the railroad gratuitously gave something to its counterparty. In that case, it allowed a mining company to build stairs up to the tracks so that the people who worked in the mining company could cross the tracks for $1. And the Fourth Circuit said, and I should say the language of that— I'm going to tell you, Mr. Taggart, I can't speak for my colleagues, but on the indemnification provision, you're swimming upstream with me, but I think on the vouchment argument, you've got a lot more going your way. I appreciate that, Your Honor, and this is my last chance to try to change your mind on this point, which is pointing to us— I mean, my view was, I mean, when I read Park Bride and what the Georgia courts have said about how to read indemnity provisions and that the words of a contract of indemnification must be construed strictly against the indemnity, every presumption is against such intention that unless the contract for indemnification explicitly and expressly states that the negligence of the indemnity is covered, courts will not interpret such an agreement as a promise to save the indemnity from its own negligence. I mean, I'm just telling you, I mean, you can argue about this as much as you want, but I think the district court may have misunderstood the vouchment statute. I agree, and I will get there, but again, whatever the court said in that case can't and Batson Cook. So if you're sort of trying to discern where the law of Georgia is, under Georgia law, you have to go with the older cases, which make it crystal clear you don't need to specifically say this is—the purpose of this is to indemnify the indemnity for its sole negligence. You can't harmonize those cases. You have to go with the earlier ones until the Georgia Court of Appeals overrules them or the Georgia Supreme Court gets involved. So and I just to finish my point about the Casey case, which I urge you to read, the court said because it was a completely gratuitous agreement that increased the risk of an accident by allowing people to access the tracks and gave no benefit to the railroad, a broad indemnification clause that didn't have anything close to the clear language that our case has should be construed to require indemnification for the railroad's sole fault. So with — and the final point on this, if I may, is I know — I know you think I'm wasting my — pardon? You might want to make your first point on vouchment. All right, Your Honor. So on the vouchment, we think that the resolution of that issue should begin and end with the plain language of the statute. Both the language of the statute and its title make clear that only the vouchee is concluded. There's not a single Georgia case ever holding that a voucher was concluded under the statute or the common law that preceded it. None of the — So the statute is codifying the common law rule. You would agree with that, right? That is — yes. Well, the statute — Georgia courts have been super clear about that, that that's what it does. It codifies the common law. Some of the cases say it codified the common law. I think whether — whatever it did, its language is plain, and the Court has to follow the language. I just want to make sure I understand how it does work. What is basically, by virtue of the vouchment, not relitigated? It seems to me that the negligence of General Mills can be relitigated. I agree. But tell me what can't be. I mean, surely, by virtue of the vouchment, there are some things that can't be relitigated. Sure. It seemed to me the plaintiff's negligence, for example, cannot be — or non-negligence. That's absolutely right. The plaintiff's negligence can't be relitigated. Let me make this concrete. Okay. This whole thing arose because General Mills wanted to argue that CSX should not be able to recover because it did a crappy job defending the underlying case. Yeah. And it shouldn't have settled for $16 million. Those are exactly the two things that the statute meant to be concluded. All the cases say that the vouchee can't recontest the underlying defendant's, the voucher's, liability or the amount of the judgment against it. And so that's the full scope of that statute. And again, it doesn't purport to bind the voucher at all. But it doesn't really matter who's bound if the issue wasn't litigated. You know, if the issue that was litigated was as between CSX and the plaintiff and not as between CSX and General Mills, then it doesn't really matter who's bound. Is that your argument? Well, that's part of it. That's sort of the Georgia collateral estoppel law would mean nobody's bound unless the statute changes it. And the statute changed collateral estoppel law only in a very narrow swath. Is there any reason why the vouchment statute should have broader preclusive effect than Georgia's collateral estoppel doctrine? Well, it shouldn't have any more broad conclusive effect than it's — But it seems to me the district court gave it that. Much broader. And this may be a softball to you and may be more of a question for your colleague, but — Yes, far broader. I mean, our point was it is in derogation of the common law of collateral estoppel, and therefore, it has to be construed narrowly and according to its plain language. So both as to who's bound and as to scope of what is conclusive, it has to be construed narrowly. Setting aside questions about whether you can relitigate things, was the issue of General Mills' negligence actually decided in the Birchfield litigation? It was not. No. The judge instructed the jury not to consider it. And just to flip it on its head, if we had had that nonpartite fault defense in the case and the jury had found General Mills partially at fault, they'd be allowed to come in and say they're not bound by that. Okay. That's the whole — that — the statute is narrow, and it would have benefited them. Okay, Mr. Steger. You've saved three minutes for rebuttal. Thank you very much, Your Honor. Let's hear from Ms. Ambrose. Thank you, Your Honors. May it please the Court. Emily Ambrose on behalf of General Mills. I'm going to jump right in on the vouchment doctrine. So a few points of clarification to the question of whether General Mills' negligence was actually decided in the Birchfield case. What was decided in the Birchfield case was fault for the 2005 rail car accident. So — As between Birchfield and CSX. Well, as to the facts of the accident, and CSX had tried to blame the accident in the Birchfield case on the negligence of General Mills, and it was unable to do so because it did not have any evidence. It did not put forth sufficient evidence, and it lost the issue on summary judgment. Well, actually, the district court said it was belatedly raised and there was not an expert to support that theory. That's correct. And the — and the — and that's evidence, right? There was no — a reasonable jury could not find that General Mills was negligent. Well, the jury wasn't permitted to hear any evidence because the court said you didn't timely designate an expert and didn't timely raise this legal position. Right. That was the basis for the summary judgment ruling. Summary judgment in general means that there is not enough facts from which a jury could find — No. A summary judgment could be you belatedly raised something, and I'm not going to permit you to put that in front of the jury. Well, the judge found both, right? The judge found that it was belatedly raised, and it also found that there was not sufficient evidence of the standard of care of General Mills, which is a required element of negligence. But even setting aside, we don't need this court to bind — to decide that the summary judgment ruling is the place where the jury found or did not find fault for General Mills. The jury found fault for the entire cause of the 2005 rail car accident. The general verdict takes into account the arguments raised. And I think where the — where there may be a point of confusion is that all of the arguments that CSX raised before that go to General Mills' negligence are the same arguments they're raising now as to General Mills' negligence. And they all relate back to a few discrete facts that nobody can contest that the jury decided. That is, whether Doug Birchfield, an employee of General Mills, actually set the handbrake, whether Doug Birchfield's failure to use chalks or derailers led to causing the accident, and his choice to use his colleague who was in training to help him switch cars that day. CSX agrees that those facts were litigated to the jury. It's part of our statement of uncontroverted facts, which they said was undisputed. It's in the record at, I think, 193. So there is absolutely no dispute that the factual predicates that underlie what they're saying is General Mills' negligence were, in fact, litigated. And then in this case, what they're saying is the exact same thing, except for they're using the word supervised. General Mills didn't supervise Birchfield, and he didn't set the handbrake. Well, the jury said he did set the handbrake. If they're going to relitigate the question of whether Doug Birchfield set the handbrake, that's relitigating fault for the accident. And that was what was decided in the first case. And to be clear, the vouchment statute, as the Chief Judge noted, was codifying common law. The original statute in 1895 literally cites to the 1885 Supreme Court decision, which addresses this issue. And in that case, it's very clear that the first case under the vouchment procedure settles all of the issues that were passed upon and decided. In that case, relating to the negligence or not of the individual is a slip and fall case. And so the scope of that doctrine— It seems to me the problem with your argument is that, yes, the jury determined that CSX and not Birchfield was negligent. The jury had no capacity, opportunity to determine whether General Mills was negligent in some way. And it seems to me the vouchment statute necessarily cannot have a broader preclusive effect than Georgia's collateral estoppel doctrine. But it seems like that's exactly what the district court did. It gave some super preclusive effect to bind a party that wasn't even at trial as to a negligence finding by a jury that was told, don't determine whether this party was negligent. A couple different points baked into that question. So on the question of the jury and what they decided, the Georgia rules that interpret a judgment is that you have to interpret the jury's judgment as deciding all the issues that came before it. And CSX literally argued in that case to the jury that let them do it, even though it was opposed, that Doug Birchfield should have set chocks, should have set derailers, didn't set the handbrake. Those are the same factual issues that CSX wants to relitigate in the case against General Mills to say General Mills should have supervised him better so that he would have done all these things. So the jury did not decide on a legal parameter. It did not allocate fault for General Mills on a legal theory. But all of the facts underpinning what is General Mills' negligence was decided. On the issue of the broader scope on voucher and collateral estate, well, there are two distinct common law doctrines. I don't know which one is older, but it's not that they're just two different doctrines. And the Hardy case that we cite explains the differences between the two, and there are a lot of differences. And there are consequences of vouchment, and there are pros and cons to choosing vouchment. In 2007— But it's a right granted to the voucher, not to the vouchee. Well, okay— You're using it effectively as a weapon that benefits the vouchee. Well, actually— That's what it seems to me the district court misunderstood about how vouchment works. Yeah, let me get into that question specifically. So what our view is that the statute says that the amount of the judgment and the right of the original plaintiff to recover against the—here, it would be CSX—that those matters are binding upon—are conclusive. They're concluded upon the vouchee. And what CSX is doing is—because this came up, because they wanted to prevent General Mills from contracting affirmative defenses—is saying that General Mills is bound, but only to the part that it wants General Mills to be bound to, which is the amount of the judgment, but not in the right of the plaintiff to recover. The right of the plaintiff to recover argument goes to scope, but I'm trying to specifically address who it's binding on. And the right of the plaintiff to recover cannot be binding on one party or not another. The facts that underlie the accident cannot be bound. The facts are either established or they're not established. Mr. Tager agrees you can't relitigate whether the plaintiff was negligent, okay? Okay. I mean, I thought he was pretty clear about that in his opening argument. But that's very different from whether CSX can sue General Mills for negligence. Yes. So CSX did not sue General Mills for negligence. It's a—this is a breach-of-contract claim, and the question is— They can sue them for vouchement. That's the—I think that's what Judge Pryor's really asking. Well, indemnification. They can sue for indemnification. That—I think you have a good argument that the contract of indemnity would require proof of General Mills' negligence. Yeah. But just getting to the fault allocation piece, that there is no daylight here between—there might be. In a lot of cases, there are. In the Bind case is an example of where there were a couple of arguments, hey, those can't be relitigated because they were settled in the prior case. But here's some additional arguments that you could talk about later. In this case, there just is no daylight between CSX's factual arguments as to what happened that caused the accident and their argument that General Mills is at fault for that. There is no way for a jury in this second contract case to make the same conclusions it drew before and find General Mills negligent. The arguments are that General Mills is negligent because Birchfield did not set the handbrake on the rail car, did not use chalks, use this employee that he shouldn't have used. All those issues— But their argument is that that was the fault of General Mills, not the fault of Birchfield. But how—it cannot be the fault of General Mills if the jury rejected—it's not causally related to the incident. So, yeah, maybe in isolation— Let me ask you this. Okay. If CSX had never raised the issue of General Mills negligence at all in the Birchfield litigation, they had just sent you the vouchment notice, you had an invitation to come in. If you don't come in, you're bound by any finding the jury makes, any judgment, all right? You can't relitigate those under the vouchment statute. And then this suit occurs, and we don't have anything about the district court making a ruling in the Birchfield litigation about whether General Mills negligence can be an issue put before the jury. It's fault. Where are we then? We're in the same place we are now because in every case, every case from 1885 to 1906, all of those cases, what they have in common is there is an underlying accident, there is a slip and fall, there's a building that collapsed, there's an awning that fell, there's something that happened. Those matters are always litigated in the first case. The second case, you can't go back and say, no, I don't think that's why the awning fell. I don't think that's why the guy slipped and fell. I don't think that's why. So you read into the first case, it's the overall what happened from a fact standpoint. Why did the awning fall? Here. Why did the railcar run away down the track? It's because, according to the jury, it had a faulty handbrake on it, and that that handbrake was the railcar with the faulty handbrake was provided at General Mills two days before the accident, and it was CSX's responsibility to fix that faulty handbrake. All of those cases, all of the cases that we've cited and that they've cited, that first question of fault, the underlying fault question of, hey, why did this occur, that's decided in the first case. And there are cases that say any defenses you could have raised, I mean, in that way, it is very similar to the collateral estoppel doctrine, but it doesn't mean that it's going beyond the scope of it. It's just that same kind of question of what does the jury decide when it reaches a general verdict? It decides these issues. It decides this issue. The second case is where we say, okay, based on the fault for the 2005 accident and the allocation, does General Mills have to indemnify CSX under the contract? And on that issue, General Mills, because it wasn't in the first case, is allowed to raise affirmative defenses or issues. And if there were, and in this case, the case we're in, there's so much overlap that you don't have a lot of these examples. But, for example, if the contract had said something like, if, you know, this clause only applies if CSX delivers a railcar on a Thursday, for example. That issue wasn't decided before.  It goes to the contract. It goes to whether General Mills is required to indemnify under the contract. But the contract itself, you know, the way that vouchment works is a two-step process, and every case agrees with that. And step one is always the underlying. What's your best case for saying that a vouchee can be held bound by a prior judgment in which the vouchee, what's your best case to support your position? So the 1885 decision. Western and Atlantic. Yeah, the Western and Atlantic decision, the MacArthur v. Ogletree decision, the Bind decision, the Southern Railway decision, the all of the, every decision. The problem with that was what the vouchee railroad argued in that was that the plaintiff was at fault. And so that, the Georgia Supreme Court said, no, you can't re-litigate that. That's precisely what Mr. Tager admits he can't re-litigate here, is Birchfield's negligence. That's not the same, though, as the contractual indemnification claim from CSX to General Mills that, I agree with you, requires a showing of negligence on the part of General Mills. But in the event that that is proved, it seems to me vouchment has nothing to do with it. Well, on that issue, I want to clarify, too, that there is a standard of review here where it's a de novo review of the legal questions. But the district court, who presided over both jury trials and all of discovery, right, we are on appeal from a summary judgment decision that is, fact discovery is done, expert discovery was done, and the district court correctly found that there is no daylight between the arguments, the fact arguments that went to Doug Birchfield's individual negligence and CSX's fault and the argument about General Mills' negligence in this case. Factually, complete overlap. And the contract doesn't, you know, it's, the sole negligence is an issue, but it's a fact question. We have, who did what here? You know, it's the, what happened, what caused the accident, and then you step into the second litigation, and it's, does General Mills require to indemnify CSX? CSX was 100 percent at fault because it delivered a rail car with a faulty handbrake. If that's true, that's what the jury found. We can't relitigate that question. So I guess the question I would ask for on rebuttal is, where's the daylight here? What is it that they can relitigate? Is your argument that the claim that General Mills was negligent is a theory of vicarious liability? I thought it was a claim that General Mills was negligent. So CSX's claims that General Mills is negligent are all based... Different from vicarious liability. Well, what I was going to say was that they're all based on a vicarious argument. Technically, whether it's technically vicarious liability or not, they're all based on the idea that General Mills acts through its employees and that its employees did not do what they should have done, and the argument to try to get around vicarious liability is that General Mills did not supervise them enough. We didn't have a supervisor, but it's the same fact. So there is no daylight left to litigate, and it's clear error that Judge Thrash found that. So I see my time is up. Thank you, and we ask you to confirm. Mr. Tager, you've got three minutes. And I'll try not to use them all. I think the Court understands my points. I think I'll just reinforce a couple quickly to confirm that. The first point is that the verdict itself does not indicate why the jury found that Mr. Birchfield was not negligent. It was a general verdict. So there could be... There's no special verdict about particular findings of fact that support that general verdict finding. It's just that Birchfield was not negligent. Right, and it could be anything. Secondly, our argument that there was negligent supervision and training is not a vicarious liability argument, as you said. And it doesn't depend on whether he set the handbrake. If, for example, we concluded he... The jury could conclude he's a good employee, he does what he's told, but he wasn't told properly what to do. Yeah, there was no failure to exercise reasonable care on his part. The problem was with his employer. Right, and to be concrete, you know, they just sent these guys out to switch these trains. There was nobody more experienced supervising them. They were like, so Doug, take Turk out there and go move these trains. So that's basically the point. And then the last point I'd make is, which I think Your Honor has already said, but I just want to confirm, Western and Atlantic Railroad, the holding in that case was only that the railroad could not re-litigate whether the underlying plaintiff, Mr. Montgomery, was contributory negligent. They wanted to be able to say, just like General Mills would like to do here, they want to say you screwed up the defense. And we get to try all over to show that this guy should have avoided his own accident. And that's the only thing that they said was concluded. Right. Thank you, Mr. Tager. We have your case, and we'll move on to our next one. Thank you, Your Honors. Baker v. Upson Regional Medical.